**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JAMES CRAIG CRISTINI,

     Petitioner,                       Civil No. 01-CV- 74483-DT
                                       HONORABLE DENISE PAGE HOOD
v.                                 UNITED STATES DISTRICT JUDGE

JEFFREY WOODS,

     Respondent.
_____/

## OPINION AND ORDER ON REMAND DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY AND ALLOWING LEAVE TO APPEAL IN FORMA PAUPERIS

This matter is on remand from the United States Court of Appeals for the Sixth Circuit.  James Craig Cristini, ("Petitioner"), presently confined at the Kincheloe Correctional Facility in Kinross, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for second-degree murder, M.C.L.A. 750.317; M.S.A. 28.549, mutilation of a dead body, M.C.L.A. 750.160; M.S.A. 28.357, and habitual offender, second offense, M.C.L.A. 769.10; M.S.A. 28.1082. [1]  For the reasons that follow, the petition for writ of habeas corpus is DENIED.

---

[1]   The Court will order that the caption in this case be amended to reflect that the proper respondent in this case is now Jeffrey Woods, the warden of Kinross Correctional Facility in Kincheloe, Michigan, where Petitioner is currently incarcerated.  The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden. *See Edwards Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 foll. U.S.C. § 2254.

## I.  Background

This Court will recite verbatim the facts of the case as stated by the Sixth

Circuit in their opinion and order reversing and remanding this Court's original

grant of a writ of habeas corpus:

> The Michigan Court of Appeals summarized the facts in the underlying crime as follows:
>
> Defendant's convictions arise out of the killing of James Scott Bussell, who died of blunt force injuries to his head after being repeatedly kicked by defendant in an auto body shop owned by Tayser Mona in the early morning hours of January 17, 1994.  At trial, Mona was the key prosecution witness testifying pursuant to an agreement with the prosecutor following his convictions for mutilation of a dead body and habitual offender, fourth offense arising from his involvement in the incident.
>
> According to Mona, on January 16, 1994, defendant, Mona and Bussell spent the late afternoon together at the Oakland Mall, purchasing merchandise with bad checks. Thereafter, the threesome went together in Mona's car to various places, including Mona's home.  Defendant, Mona and Bussell then went to "Tycoon's," a topless bar, where they stayed until closing time.  After leaving the bar, between 2:00 and 3:00 a.m. on January 17, the threesome went together in Mona's car to his collision shop located on Dequindre just north of Nine Mile to make calls to several "escort services."  Mona testified that while he was on the phone, he saw Bussell stand up and push defendant.  In response, defendant hit Bussell in the face, causing Bussell to fall to the floor.  At that point, Mona saw defendant, who was wearing cowboy boots, repeatedly kick Bussell in the head.  When Mona asked them to stop fighting, defendant ceased kicking Bussell, who was injured and lying on the floor.  However, according to Mona, defendant again started kicking Bussell, about two or three times.  After defendant sat down in response to Mona's request to stop hitting Bussell, defendant got up again and began kicking Bussell.  Mona then went to the back of his shop to get some ice, returning with a rag with cold water on it.  When Mona returned, defendant, who was standing over Bussell, told Mona that Bussell was dead.  At that point, defendant again kicked Bussell

2

very hard in the head.  Subsequently, defendant asked Mona to let him use his car to move Bussell's body.

Thereafter, Mona assisted defendant in moving Bussell's body to his car and transporting the body to an alley near Seven Mile and John R in Detroit.  Placing the body next to a dumpster, defendant poured lacquer thinner over the body and set it on fire.  Mona and defendant then returned to the collision shop to clean up the blood stains on the floor and to destroy any evidence that might implicate them in Bussell's death. Next, Mona and defendant drove to a motel on Eight Mile and Dequindre, where they threw out a piece of carpeting that was used to wrap the deceased's body.  As they drove along Eight Mile, Mona and defendant also tossed out the deceased's personal effects, bloody clothes and rags through the car window.

According to Mona, he and defendant then went to a White Castle at Eight Mile and Gratiot, where defendant bought hamburgers to bring back to the shop for a final look.  Then, defendant and Mona went to the Oakland Mall to retrieve Bussell's car.  Mona testified that he then followed defendant driving Bussell's car to a gasoline station on Woodward and Eleven Mile Road to buy a gas can and gasoline. According to Mona, defendant went into the station, bought the gas can and pumped the gas.  After purchasing the gasoline, Mona followed defendant in Bussell's car to another location in Detroit.  There, defendant poured gasoline into Bussell's car and then set it on fire.

Michigan brought murder and abuse-of-corpse charges against both Petitioner Cristini and Tayser Mona.  After Mona's trial was severed, a Michigan jury convicted Mona of being an accessory to murder after the fact and with mutilation of Bussell's body.  After being found guilty, co-defendant Mona agreed to testify against Cristini.  In return for Mona's testimony, the prosecutor agreed to reduce the habitual offender charge so that Mona faced 13-20 years rather than a life sentence.

At trial, the prosecution offered evidence that Cristini introduced victim Bussell to Mona, who had not previously known Bussell.  Defendant Cristini testified that he "grew up with Scott Bussell" and he had "hung out with Scott."  The three went out together on January 16, 1994, staying out until after the bars closed, when they went to Mona's body shop, apparently to call prostitutes.  After returning to that location,

Mona testified that Cristini and Bussell got into an argument, that Cristini punched Bussell, knocking him down, and then continued kicking Bussell in the head while Bussell lay on the ground, causing his death.

According to the prosecution, Cristini and Mona then took Bussell's body to a location in Detroit and set it on fire with paint thinner. The prosecution also offered evidence that Cristini and Mona recovered Bussell's car, purchased gasoline at a gasoline station, and then set Bussell's vehicle on fire on a Detroit street.

In addition to Mona's testimony describing how Cristini killed Bussell, the prosecution offered testimony of a number of witnesses who corroborated Mona's testimony and identified Cristini or a person with Cristini's features as being involved with the disposition of Bussell's body. Darold Sayler, a garbage collector, testified that he saw three people in the alley in Detroit where the victim's body was found between 3:00 and 3:45 am at a distance of approximately 120 to 150 feet. The three people "were all kind of like shoulder to shoulder coming around the can like they were moving something" and "they started the fire." Sayler blew his horn and two of the men ran off to a vehicle at the other end of the alley way. Another individual later found Scott Bussell's burnt body at the place where Sayler saw these two men start the fire.

A security guard at Oakland Mall, Jason Lee, testified that he saw the victim's car parked at the mall between 3:00 and 4:00 am and recorded it in his abandoned-vehicle log. Between 7:00 and 8:00 am, guard Lee noticed a second vehicle taking a place adjacent to the abandoned vehicle. He saw two white men in their mid-twenties to early thirties. One he identified as Mona, and the second man he described as having a lighter complexion, "bushy long" blonde hair, and weighing about 210 pounds. Eventually, one of the persons entered victim Bussell's blue Aries, and both vehicles drove off.

Police recovered the victim's car ten days later. It had been burned by a fire set by spreading gasoline in the car's interior. The police found two melted down plastic containers in the car.

An Amoco gas station attendant, Ramsey, testified that she recognized both Mona and Cristini as having purchased a gasoline container and

4

gasoline from her between 7:00 and 8:00 am on the morning following Bussell's death. She described the person who purchased the gasoline as "tall and he had blond hair and it was on the back of his neck." She further testified that Mona had bought a gas container with gas from another attendant.

The other gas station attendant, Christian, testified that co-defendant Mona had purchased a small amount of gasoline from her and was accompanied by another man who had neck-length blonde hair: "He was on the lot next to the car when they were pumping the gas, and I could only see the back of his head. And he was tall and he had blonde hair and it was on the back of his neck." She testified that it was unusual for people to buy gas containers: " Most people don't want to pay $3.29 for a gas can they only need for a few minutes." She could not identify this second man.

In addition to this testimony, the prosecution called seven witnesses who testified about prior assaults that Cristini had committed. Prior to trial, the prosecutor had filed a pre-trial notice of his intention to use this prior bad acts evidence pursuant to M.R.E. 404(b). The prosecutor had sought to use this evidence to show Cristini's *modus operandi* in committing unprovoked assaults by striking the heads of his victims with various objects. Over defense counsel's objection, the trial court ruled that evidence regarding these prior assaults could be admitted. In his opening argument, the prosecutor indicated he would not rely solely on Tayser Mona's testimony, but would also offer evidence that Cristini had a history of directing his assaults to the faces of his victims. This evidence, he said, would demonstrate that the Petitioner had a "propensity" for assaulting persons, without provocation, by striking the victim's face and head with objects. The prosecution argued that this evidence would establish his identity as the killer and contradict his alibi defense.

As a defense, Cristini offered alibi testimony that he had been with Bussell and Mona on January 16, 1994, until about 10:00 pm, when he claimed Bussell and Mona dropped him off at his mother's home. He testified that he remained at his mother's home with his brother until near midnight and then left to pick up bet winnings from Bobby Rizzo. He said he then went to his brother Craig Cristini's home with some friends. He testified that he was with these friends at the time of the killing and questioned the identification testimony of certain prosecution

witnesses.

Cristini presented several alibi witnesses, who claimed that he was with them from approximately 11:00 pm on the night of Bussell's murder until the next morning, when he went to his brother's car wash at 8:00 am.  The prosecution attacked this testimony.  For example, Craig Cristini, the defendant's brother, testified that the defendant had been with him on the night of the murder.  In response, the prosecution showed that Craig Cristini knew within weeks that his brother was sought for the murder and yet never approached police to claim that defendant James Cristini had been with him on the night of the murder.

With regard to alibi witness Craig Cristini, the prosecution also elicited testimony from Dawn Macro, decedent Scott Bussell's sister.  Macro testified that Craig Cristini called her to see if her family had been able to locate her brother, Scott.  She testified that in her conversation she asked alibi witness Craig Cristini when he last saw James Cristini before her brother's disappearance.  In conflict with his alibi testimony, she testified that Craig Cristini told her that he had last seen his brother three days before the murder.

Cristini also called Robert Rizzo, Jr. to provide alibi testimony.  Rizzo testified that he had been with defendant Cristini on the night of the murder, that Cristini had a short brush haircut at the time, and that he had never known Cristini to have long hair and a beard.  Responding to this, the prosecution offered evidence that Rizzo had been questioned about the murder less than a month after its occurrence and had failed to tell the investigating police officer that Cristini had been with him on the night of the murder.

Cristini testified that he did not kill James Scott Bussell, claiming that he was elsewhere at the time of the murder.  He testified to his reasons for going to Florida shortly after Bussell's murder, and further explained that he had used Mark Sawka's name when he was driving in Florida because he had outstanding traffic warrants.   In response, the prosecution presented evidence that the Florida officer arrested Cristini on an arrest warrant for Mark Sawka for a probation violation, believing that Cristini was Mark Sawka, the name given by Cristini.  Even after being arrested, Cristini never gave his true name.  The prosecutor argued that Cristini's explanation made no sense: why would he suffer a probation violation arrest to avoid arrest for a traffic matter?

*Cristini v. McKee,* 526 F. 3d 888, 891-95 (6th Cir. 2008)(internal citations and footnotes omitted).

Petitioner's conviction was affirmed on appeal. *People v. Cristini,* No. 188079 (Mich.Ct.App. July 17, 1998); *remanded* 461 Mich. 907; 603 N.W. 2d 783 (1999); *reconsideration den.* 461 Mich. 907; 607 N.W. 2d 724 (2000)(Kelly, J. would grant reconsideration and on reconsideration would grant leave to appeal). On remand, the Michigan Court of Appeals again affirmed the conviction. *People v. Cristini,* No. 188079 (On Remand)(Mich.Ct.App. February 25, 2000); *lv. den.* 463 Mich. 919; 620 N.W. 2d 306 (2000).

In 2001, Petitioner filed an application for writ of habeas corpus with this Court.  This Court dismissed the application without prejudice, because Petitioner's claim that the prosecutor had committed misconduct by extensively using Petitioner's prior assaultive behavior as character evidence had not been raised in the state courts as a federal constitutional claim or as a prosecutorial misconduct claim distinct from his claim that the admission of Petitioner's prior assaultive behavior violated M.R.E. 404(b)(1). *See Cristini v. McKee,* U.S.D.C. No. 01-74483-DT (E.D. Mich. March 19, 2003).

Petitioner subsequently filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. seq.*  The motion was denied by the trial court. *People v. Cristini,* No. 94-2485-FC (Macomb County Circuit Court, May 28, 2003).  The Michigan Court of Appeals denied the application for leave to appeal,

7

but remanded the matter for an evidentiary hearing on petitioner's claim of newly

discovered evidence in support of his actual innocence claim. *People v. Cristini,*

No. 249256 (Mich.Ct.App. November 20, 2003). The Michigan Supreme Court

denied Petitioner's application for leave to appeal, because it was not timely filed.

On remand, Petitioner presented evidence and testimony that Tayser Mona

had told two fellow inmates, Raad Matti and Bahaa S. Kalasho, that he had

committed perjury against Petitioner and had fabricated his testimony. The trial

court denied the motion for a new trial, finding the evidence lacking in credibility.

*People v. Cristini,* No. 94-2485-FC (Macomb County Circuit Court, February 5,

2004). This decision was affirmed on appeal. *People v. Cristini,* No. 255040

(Mich.Ct. App. December 16, 2004); *lv. den.,* 472 Mich. 920; 696 N.W. 2d 714

(2005); *reconsideration den.* 473 Mich. 886; 699 N.W.2d 700 (2005).

Following the exhaustion of his state court remedies, this Court permitted

Petitioner to reopen his habeas petition. This Court granted a conditional writ of

habeas corpus to Petitioner, on the ground that Petitioner had been deprived of a

fair trial because of prosecutorial misconduct. *Cristini v. McKee*, No. 2006 WL

5720343 (E.D. Mich. March 28, 2006). Because the Court granted Petitioner

relief on these claims, the Court declined to address the remaining claims. *Id.*

The Sixth Circuit subsequently reversed this Court's decision to grant

Petitioner habeas relief and remanded the matter to this Court for consideration

of the remaining claims. *Cristini v. McKee,* 526 F. 3d 888 (6th Cir. 2008); *cert. den.*

8

*sub. nom Cristini v. Hofbauer,* 129 S. Ct. 1991 (2009).

On March 24, 2010, this Court permitted Petitioner to reopen his habeas

petition and also granted his motion to amend his habeas petition.  In his

amended habeas petition, Petitioner seeks habeas relief on the following claims:

> I. Petitioner's Fifth and Fourteenth Amendment rights under the U.S. Constitution were violated by egregious prosecutorial misconduct which denied Petitioner a fair trial and due process by arguing facts not in evidence.
>
> II. Petitioner's Fifth and Fourteenth Amendment rights under the U.S. Constitution were violated by Petitioner not receiving a fair trial and due process by the improper introduction of evidence of prior unrelated assaultive behavior.
>
> III. Petitioner's Sixth and Fourteenth Amendment rights under the U.S. Constitution were violated when his trial counsel was ineffective.
>
> IV. Petitioner's Sixth and Fourteenth Amendment rights under the U.S. Constitution were violated when his appellate counsel was ineffective on his first appeal of right.
>
> V. Petitioner's Fifth, Sixth and Fourteenth Amendment rights under the U.S. Constitution were violated when the trial judge told defense counsel not to object during the prosecutor's closing argument.
>
> VI. Petitioner's Sixth and Fourteenth Amendment rights under the U.S. Constitution were violated when the trial judge repeatedly and improperly inhibited the presentation of the defense proofs, and considered either singly or cumulative, fatally violated Petitioner's constitutional rights to present a defense and to a fair trial.
>
> VII. Petitioner's Fifth and Fourteenth Amendment rights under the U.S. Constitution were violated by the repeated instances of prosecutorial misconduct.
>
> VIII. Petitioner's Fifth and Fourteenth Amendment rights under the U.S. Constitution were violated when the trial judge refused to suppress the

9

identification by Ms. Ramsay, who had been exposed to a suggestive single photograph (mug shot) identification procedure on numerous occasions.

IX. Petitioner's Fifth and Fourteenth Amendment rights under the U.S. Constitution were violated when the delay in arrest and trial violated Petitioner's due process and fair trial [rights] and prejudiced Petitioner, which was intentional delay so the prosecutor could gain a tactical advantage over Petitioner.

X. Petitioner's Fifth and Fourteenth Amendment rights under the U.S. Constitution were violated when the cumulative effect of the constitutional errors denied Petitioner's [right to] due process.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).  Furthermore, pursuant to §

11

2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

12

disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III. Discussion

### A. The law of the case doctrine bars relitigation of the claims and issues already adjudicated by this Court and the Sixth Circuit.

Respondent contends that the law of the case doctrine bars this Court from reviewing the prosecutorial misconduct claims raised by Petitioner in his first and seventh claims, because he already raised these claims in his original habeas petition before this Court, which consolidated all of Petitioner's prosecutorial misconduct claims before granting habeas relief on the basis of prosecutorial misconduct. Respondent notes that the Sixth Circuit subsequently reversed this Court's grant of habeas relief, ruling that the prosecutor had not engaged in misconduct.

Under the law of the case doctrine, a court is ordinarily precluded from re-examining an issue previously decided by the same court, or by a higher court in the same case. *Consolidation Coal Co. v. McMahon*, 77 F. 3d 898, 905 (6th Cir. 1996). "Under the doctrine of law of the case, findings made at one point of the litigation become the law of the case for subsequent stages of that same litigation." *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994). Determinations by a court of appeals are binding on the district court and the appellate court in later appeals, unless one of three exceptions applies: (1) a party raises substantially different evidence in a subsequent trial; (2) a

13

controlling authority takes a subsequent contrary view of the law; or (3) a

decision is clearly erroneous and would work a manifest injustice. *United States*

*v. Haynes*, 468 F.3d 422, 426 (6th Cir. 2006). The law of the case doctrine has

been applied to habeas cases in various contexts. *See Crick v. Smith*, 729 F. 2d

1038, 1039 (6th Cir. 1984).

This Court granted habeas relief to Petitioner on two grounds.  First, this

Court ruled that the prosecutor had committed misconduct by using Petitioner's

assaultive behavior and bad character to prove his propensity to commit the

murder:

> In the present case, as the Michigan Court of Appeals indicated, the
> prosecutor made extensive use of Petitioner's prior assaultive behavior
> throughout trial and in his opening and closing arguments to establish
> that Petitioner was a bad character and had the propensity to commit
> the murder.  Further compounding the misconduct was the fact that
> the prosecutor elicited evidence concerning prior assaultive behavior
> for which there had been no conviction, including an assault charge
> which had been dismissed against Petitioner.   In addition, the
> prosecutor also brought up other aspects of Petitioner's alleged bad
> character in closing argument, noting that Petitioner's driver's license
> had expired, that Petitioner had failed to pay parking tickets, that he
> failed to appear several times in court on these matters, and that
> Petitioner mistreated women.   Because the prosecutor improperly
> used Petitioner's assaultive behavior and other character evidence to
> prove Petitioner's propensity to commit the murder, and because this
> character attack pervaded the entire trial, Petitioner has established
> that the prosecutor violated his right to a fair trial.

*Cristini v. McKee*, No. 2006 WL 5720343, Slip. Op. at * 14.

This Court further ruled that the prosecutor committed misconduct by

arguing that several of Petitioner's alibi witnesses had lied or committed perjury,

14

when there was no evidence presented to support those allegations.   *Id.*

The Sixth Circuit reversed the grant of the writ.  In so ruling, the Sixth Circuit concluded that prosecutor did not engage in misconduct by commenting on Petitioner's prior assaultive conduct, where the trial court had previously ruled that such bad acts were relevant to establish the identity of the perpetrator.  The Sixth Circuit ruled that to the extent that the prosecutor's arguments went beyond the scope of the trial court's ruling, any error was harmless in light of what the Sixth Circuit concluded was compelling evidence against Petitioner. *Cristini,* 526 F. 3d at 900-01.  The Sixth Circuit further ruled that the prosecutor's closing remarks in which he referred to Petitioner's alibi witnesses as liars and commenting on their testimony as unbelievable and false did not constitute prosecutorial misconduct. *Id.,* at 901-02.

This Court agrees that to the extent that Petitioner is attempting again to raise prosecutorial misconduct claims that were previously adjudicated by either this Court or the Sixth Circuit, the law of the case doctrine precludes this Court from relitigating these claims.  Petitioner, however, has also raised several additional prosecutorial misconduct claims that were not previously adjudicated by either this Court or the Sixth Circuit.  Accordingly, this Court will address these claims.

**B. Claims # 1 and # 7.  The remaining prosecutorial misconduct claims.**

In his first and seventh claims, petitioner raises several prosecutorial misconduct claims that were not previously addressed by either this Court or the Sixth Circuit. [2]

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999)("[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation"). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F. 2d 605, 608 (6th Cir. 1982). The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir. 1997)(quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)). Finally, "[t]he

---

[2] Respondent argues that several of petitioner's prosecutorial misconduct claims are procedurally defaulted because he failed to object at trial. Petitioner claims that his trial counsel was ineffective for failing to object to the prosecutor's alleged misconduct. (See Claim III, *infra*). Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier for this Court to consider the merits of these claims. *See Cameron v. Birkett*, 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

16

Supreme Court has clearly indicated that the state courts have substantial

breathing room when considering prosecutorial misconduct claims because

'constitutional line drawing [in prosecutorial misconduct cases] is necessarily

imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006) (quoting

*Donnelly*, 416 U.S. at 645).

Petitioner first contends that the prosecutor impermissibly argued facts

that had not been introduced into evidence by arguing that Dominic Cristini did

not testify as an alibi witness because he did not wish to commit perjury.

It is improper for a prosecutor during closing arguments to bring to the jury

any purported facts which have not been introduced into evidence and which are

prejudicial. *Byrd v. Collins*, 209 F. 3d 486, 535 (6th Cir. 2000).  However,

prosecutors must be given leeway to argue reasonable inferences from the

evidence. *Id.*

In the present case, it was reasonable for the prosecutor to suggest that

Dominic Cristini, who was present at Petitioner's trial, did not want to testify as to

Petitioner's alibi defense, because he would have to testify falsely to do so.  The

prosecutor introduced evidence which suggested that Petitioner's other brother

Craig Cristini testified falsely about Petitioner being with him on the night of the

murder, when he presented testimony from the victim's sister Dawn Macro that

Craig Cristini told her that he had not seen Petitioner for three days prior to the

murder.  Under the circumstances, it could be construed a reasonable inference

that Petitioner's other brother did not testify because he did not want to testify falsely on Petitioner's behalf.  Any prosecutorial misconduct was also ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. (Tr/ 5/19/1995, p. 197). *See Hamblin v. Mitchell,* 354 F. 3d 482, 495 (6th Cir. 2003).

Petitioner further claims that the prosecutor impermissibly shifted the burden of proof by commenting on Petitioner's failure to call his brother Dominic as an alibi witness.

Although a prosecutor may not comment on the failure of a defendant to produce evidence, the prosecutor may summarize the evidence and comment on its quantitative and qualitative significance. *United States v. Bond,* 22 F. 3d 662, 669 (6th Cir. 1994); *See also Byrd v. Collins*, 209 F. 3d at 534, fn. 41.

A prosecutor is free to comment upon the failure of a defendant to call or to subpoena available alibi witnesses. *United States v. Edwards*, 159 F 3d 1117, 1130 (8th Cir. 1998).  A prosecutor may comment upon a defendant's failure to present alibi witnesses so long as the comments are not phrased in such a way to call attention to the defendant's own failure to testify. *United States v. Fleishman*, 684 F 2d 1329, 1343 (9th Cir. 1982).  It is also permissible for a prosecutor to comment on the failure of alibi witnesses to voluntarily come forward. *United States v. Laury*, 985 F 2d 1293, 1305-06 (5th Cir. 1993).  A prosecutor's comment on a defendant's failure to call alibi witnesses is not

18

impermissible so long as the prosecutor does not suggest that the defendant has the burden of proving his innocence, but merely argues that the failure to produce an alibi witness undermines the defendant's alibi defense. *See Perkins v. McKee,* 411 Fed. Appx. 822, 832-33 (6th Cir. 2011); *cert. den.* 132 S.Ct. 230 (2011).

In a case almost on point, the Sixth Circuit ruled that the defendant's wife's delay in providing an alibi for the defendant was a proper subject of inquiry for cross-examination of the wife. *See United States v. Aguwa*, 123 F 3d 418, 420 (6th Cir. 1997).

The prosecutor did not suggest that Petitioner bore the burden of proving his innocence, but instead brought up Petitioner's failure to call his brother as an alibi witness to attack the credibility of Petitioner's alibi defense. Under the circumstances, the prosecutor's remarks were not improper.

The trial court instructed the jury that Petitioner was presumed innocent and that the prosecutor had the burden of proving Petitioner's guilt beyond a reasonable doubt and that the defendant was not required to prove his innocence. (Tr. 5/19/1995, pp. 195-96). In the present case, the prosecution's argument did not deprive Petitioner of a fair trial, because any prejudice which might have resulted from the comment was cured by the trial court's instructions regarding the proper burden of proof. *See Scott v. Elo,* 302 F. 3d 598, 603-04 (6th Cir. 2002).

19

Petitioner next states that the prosecutor misstated the law by suggesting to the jurors that if they did not believe petitioner's alibi defense, they must find him guilty.

When viewing the comments in context, the prosecutor was clearly arguing that both petitioner and his alibi witnesses had committed perjury by presenting a false alibi defense. (Tr. 5/19/1995, pp. 81-93).  In fact, after discussing at great length the problem with the alibi witnesses' credibility, the prosecutor summed up:

> And speaking for James Cristini, they [the alibi witnesses] are his agents.  And when they came in and lied to you, he knows they're lying.  And you can infer he put them up to it because he wants to get off on this charge.
> (*Id.,* p. 92).

An attempt to procure perjured testimony to manufacture a false alibi defense can be considered as evidence of guilt as to the crime charged under both Michigan and federal law. *See People v. Ranes,* 58 Mich. App. 268, 271-72; 227 N.W. 2d 312 (1975); *See also Newman v. Metrish,* 492 F. Supp. 2d 721, 731 (E.D. Mich. 2007)(internal citation omitted).  The prosecutor's remarks were not improper.  Petitioner is not entitled to habeas relief on his prosecutorial misconduct claims.

### C.  Claim # 2.  The prior bad acts evidence claim.

In his second claim, Petitioner claims that the trial court improperly allowed the prosecutor to use Petitioner's prior assaultive behavior to prove his

20

propensity to commit the murder.

The Supreme Court has held that "'federal habeas corpus review does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)(quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *See also Williams v. White*, 183 F. Supp. 2d 969, 977 (E.D.Mich. 2002).  The Sixth Circuit has held that "[i]n a federal habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981).  Thus, "[E]rrors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting evidence of his prior assaultive behavior is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. U.S.*, 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process).

21

The admission of this "prior bad acts" or "other acts" evidence against Petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003); See also *Adams v. Smith,* 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Given the lack of holdings by the Supreme Court on the issue of whether a state court violates a habeas petitioner's due process rights by the admission of evidence to establish the petitioner's propensity to commit criminal acts, the Michigan Court of Appeals' rejection of Petitioner's second claim was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 ( 2006).

### D.  Claims # 3 and # 4.  The ineffective assistance of counsel claims.

The Court will consolidate Petitioner's ineffective assistance of counsel claims for judicial clarity.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong

22

presumption that counsel's behavior lies within the wide range of reasonable

professional assistance. *Id.*  In other words, petitioner must overcome the

presumption that, under the circumstances, the challenged action might be

sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must

show that such performance prejudiced his defense. *Id.*  To demonstrate

prejudice, the defendant must show that "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a

demanding one. 'The likelihood of a different result must be substantial, not just

conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting

*Richter*, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places

the burden on the defendant who raises a claim of ineffective assistance of

counsel, and not the state, to show a reasonable probability that the result of the

proceeding would have been different, but for counsel's allegedly deficient

performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).  The

*Strickland* standard applies as well to claims of ineffective assistance of

appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

More importantly, on habeas review, "the question 'is not whether a

federal court believes the state court's determination' under the *Strickland*

standard 'was incorrect but whether that determination was unreasonable-a

substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420

23

(2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 129 S. Ct. at 1420 (citing *Yarborough*, 541 U.S.at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Because of this doubly deferential standard:

"Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."

*Harrington v. Richter*, 131 S. Ct. at 788.

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight'

to cast doubt on a trial that took place" over sixteen years ago "and a direct appeal that concluded some twelve years ago is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

In his third claim, petitioner initially contends that trial counsel was ineffective for failing to object to the prosecutorial misconduct that he complains of in his first and seventh claims.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001). Because the Court has already determined that the prosecutor's questions and comments did not deprive Petitioner of a fundamentally fair trial, Petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *Slagle,* 457 F. 3d at 528.

Petitioner, however, further argues that his trial counsel's failure to object to the prosecutor's remarks in closing argument amounted to a constructive denial of counsel.

Where defense counsel entirely fails to subject the prosecution's case to "meaningful adversarial testing," there has been a constructive denial of counsel, and a defendant need not make a showing of prejudice to establish ineffective

25

assistance of counsel. *Moss v. Hofbauer,* 286 F. 3d 851, 860 (6th Cir. 2002) (quoting *United States v. Cronic,* 466 U.S. 648, 659 (1984)).  However, in order for a presumption of prejudice to arise based on an attorney's failure to test the prosecutor's case, so that reversal based on ineffective assistance of counsel is warranted without any inquiry into prejudice, the attorney's failure to test the prosecutor's case "must be complete." *Bell v. Cone,* 535 U.S. 685, 697 (2002).

Petitioner's counsel's alleged errors did not rise to the level of the constructive denial of counsel, because counsel actively represented Petitioner at his trial. *Moss,* 286 F. 3d at 860-62.  Counsel made an opening argument, extensively cross-examined the prosecution witnesses, made numerous objections throughout the trial, presented a number of defense witnesses, and made a closing argument.

The *Cronic* presumption "applies only where defense counsel completely or entirely fails to oppose the prosecution throughout the guilt or penalty phase as a whole." *Benge v. Johnson*, 474 F. 3d 236, 247 (6th Cir. 2007)(citing *Bell*, 535 U.S. at 697).  In the present case, counsel's alleged failures do not amount to a complete failure to provide a defense.  The presumption of prejudice therefore does not apply and Petitioner would be required to show that he was actually prejudiced by counsel's alleged omissions in order to obtain habeas relief. *Id.*  As mentioned above, Petitioner is unable to establish that he was prejudiced by trial counsel's failure to object to the prosecutor's comments and

26

arguments.  Accordingly, he is not entitled to habeas relief on his third claim.

In his fourth claim, Petitioner claims that appellate counsel was ineffective for failing to federalize his "prior bad acts" evidence claim and his related prosecutorial misconduct claim.  Petitioner further claims that appellate counsel was ineffective for intertwining these two claims together, rather than raising them seperately.  Petitioner also claims that appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness in failing to object to the prosecutorial misconduct.  Lastly, Petitioner contends that appellate counsel was ineffective for failing to raise on direct appeal a claim that the trial court denied Petitioner a fair trial by ruling that Petitioner's trial counsel could not object during closing arguments. (See Claim # V, *infra*).

Assuming that appellate counsel was deficient with respect to Petitioner's direct appeal, Petitioner is unable to show that he was prejudiced.  The Sixth Circuit rejected Petitioner's prosecutorial misconduct claim involving the introduction of evidence of Petitioner's prior assaultive behavior, finding that it had either been used for a proper purpose, or that the admission of such evidence was harmless error.  With respect to Petitioner's separate 404(b) evidence claim, this Court has noted that such a claim is non-cognizable on habeas review, because there is no clearly established Federal law that prohibits the use of propensity evidence.  Because this issue is non-cognizable, appellate counsel's failure to federalize it could not have prejudiced Petitioner.  This Court

27

has already concluded that trial counsel was not ineffective.  In addressing Claim # V, *infra*, this Court will reject Petitioner's claim that the trial court's order to counsel to reserve objections until the conclusion of the closing arguments deprived Petitioner of a fair trial.

"[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010); *cert. den.* 131 S. Ct. 1013 (2011)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Because none of these claims can be shown to be meritorious, appellate counsel was not ineffective in her handling of Petitioner's direct appeal.  Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

### E.  Claim # 5.  The claim involving the trial judge's ruling limiting objections during closing argument.

Petitioner next contends that the trial judge violated his right to a fair trial and the right to the assistance of counsel by telling defense counsel not to object during closing argument but to reserve the objections until after the closing arguments had concluded. [3]

---

[3]  Respondent contends that Petitioner's fifth claim is procedurally defaulted pursuant to M.C.R. 6.508(D)(3) because he raised it for the first time on post-conviction review.  The Michigan appellate courts rejected Petitioner's post-conviction appeal in form orders on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." but did not refer to subsection (D)(3) nor did they mention Petitioner's failure to raise this claim on his direct appeal as their rationale for rejecting his post-conviction claims.  Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of the petitioner's claims. *Id.* In the present case, the trial court rejected Petitioner's post-

Petitioner's fifth claim is without merit.  Prior to the commencement of closing arguments, the trial judge instructed both the prosecuting attorney and defense counsel that he would prefer that if there were any objections for the attorney to "hold onto them until the end of the speaker's turn."  The judge indicated that each attorney could place any objection to the other attorney's argument at the conclusion of that attorney's argument. (Tr. 5/19/1995, p. 80).  The judge did not preclude Petitioner's counsel from objecting at the conclusion of the closing arguments or from requesting a mistrial or filing a motion for a new trial if he believed that any of the prosecutor's remarks were objectionable.  In the present case, this Court concludes that the trial judge did not place unreasonable restrictions on Petitioner by preventing him from objecting during the prosecution's closing arguments when he was given an opportunity to object at the conclusion of the arguments. *See e.g. U.S. v. Wills*, 346 F.3d 476, 492 (4th Cir. 2003).  Petitioner is not entitled to habeas relief on his fifth claim.

### F. Claim # 6.  The right to present a defense claim.

Petitioner next contends that the trial court judge in several instances deprived petitioner of his right to present a defense.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present

conviction claim on the merits without mentioning M.C.R. 6.508 (D)(3) or Petitioner's failure to raise this claim on his direct appeal.  Because the last reasoned state court decision rejected Petitioner's claim on the merits, this Court concludes that Petitioner's claim is not procedurally defaulted. *Guilmette*, 624 F. 3d 289, 292.

his own witnesses to establish a defense.  This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted).  However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996).  The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689.  The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (*quoting Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).  Finally, rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998)(quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial

court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect.  Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003).

Petitioner first contends that the trial judge erred in refusing to permit Petitioner to elicit expert testimony from a cosmetologist concerning the rate at which a person's hair can grow, in order to support Petitioner's claim that he could not have had long hair on January 17, 1994.  This expert testimony was to rebut the identification testimony of various witnesses, who claimed that the man with Tayser Mona had long hair.  The prosecutor objected to the cosmetologist's testimony on the ground that she had never cut Petitioner's hair and therefore could not know how quick it would grow.  The trial judge agreed, noting that generalizations regarding a person's hair growth would not be sufficient, instead, the expert would have to be familiar with Petitioner's hair.  On appeal, the Michgan Court of Appeals upheld that judge's ruling, "because the proposed witness could offer only speculative generalizations" regarding the rate of hair growth. *People v. Cristini,* No. 188079, * 3 (Mich.Ct.App. February 25, 2000)(On Remand).

"[N]o matter how good" experts' "credentials" may be, they are "not permitted to speculate." *Tamraz v. Lincoln Elec. Co.,* 620 F.3d 665, 671 (6th Cir.

31

2010)(quoting *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F. 3d 1083, 1088 (10th Cir. 2000)).  In the present case, the trial judge ruled that because the cosemetologist did not personally know Petitioner, she lacked sufficient knowledge concerning his rate of hair growth so as to testify as an expert on this issue.  Because the cosemetologist could only have offered a conjectural opinion on the issue of Petitioner's rate of hair growth, the trial judge did not err in excluding this testimony. *Id.*

Petitioner next contends that the trial court erred in refusing to admit a daily time sheet through defense witness Larry George, who worked at the car wash owned by petitioner's brother.  The record in question was allegedly a daily time sheet for January 17, 1994, which Petitioner sought to use as part of his alibi defense to establish that he worked at the car wash that day.  Mr. George had stopped working at the car wash about a year prior to the trial.  In addition, Mr. George was unable to produce any tax documents to show that Petitioner had worked at the car wash in 1993 or 1994.  The proposed exhibit was hand-written and lacked a time stamp.  There was also evidence that the car wash was closed on January 17, 1994 due to bad weather.  The trial judge ruled that the exhibit was inadmissible, agreeing with the prosecutor that "[t]he document is suspect, one page of documents or records is not enough to render this admissible under MRE 803(6).  It is not authentic." (Tr. 5/19/1995, pp. 15-16, 23-24, 31-34).

32

The Michigan Court of Appeals concluded that there was no abuse of discretion in excluding the exhibit beecuase it lacked trustworthiness. *People v. Cristini,* No. 188079, * 3 (Mich.Ct.App. February 25, 2000)(On Remand).

The fundamental right to present a defense is not absolute. Evidence that is deemed insufficiently unreliable, such as hearsay evidence, is excludable even if it may be relevant to the defense. *See McCullough v. Stegall,* 17 Fed. Appx. 292, 295 (6th Cir. 2001); *See also Allen v. Hawley,* 74 Fed. Appx. 457, 462-63 (6th Cir. 2003). In the present case, it was reasonable for the trial judge to determine that the proposed exhibit was untrustworthy in light of the fact that it was handwritten and lacked a time stamp, there were no tax documents or other evidence to corroborate that Petitioner had ever worked at the car wash, and additional testimony indicated that the car wash was not even open on January 17, 1994. Whether this Court would or would not have reached the same conclusion as the state courts had done regarding the trustworthiness of the proffered exhibit is "completely irrelevant" in determining whether to grant habeas relief. *Allen,* 74 Fed. Appx. at 463. Instead, the question for this Court is whether the state courts unreasonably applied federal law when adjudicating Petitioner's claim. *Id.* The state trial court considered the circumstances surrounding the exhibit, including the existence of independent corroborating evidence. Based on the state court's analysis of the facts, its conclusion that the evidence was untrustworthy was not an unreasonable application of United

33

States Supreme Court precedent, so as to entitle Petitioner to habeas relief. *Id.*

Petitioner next contends that the trial court erred in excluding evidence that Tayser Mona had assaulted him at the jail seven months prior to trial. Petitioner sought to introduce this evidence to establish Tayser's propensity for violence.  The trial judge ruled that the evidence for the jailhouse fight, in which the Macomb County Sheriff had actually sought a warrant against Petitioner, was irrelevant to the issues at trial.  The Michigan Court of Appeals held that the trial judge did not abuse his discretion in refusing to admit this evidence, because the Sheriff Department investigation revealed that Petitioner was the aggressor. *People v. Cristini,* No. 188079, * 3 (Mich.Ct.App. February 25, 2000)(On Remand).  Petitioner claims that this factual finding is inaccurate, insisting that the documentary evidence from the Macomb County Jail established that Mona was the initial aggressor.

Assuming that the trial judge erred in excluding this evidence, Petitioner is not entitled to habeas relief because it is cumulative of other evidence presented at trial that would establish Mona's violent tendencies and thereby provide Petitioner with evidence to argue that Mona was the person who committed the murder.  Tayser Mona admitted on cross-examination that he had been involved in several bar fights, in which he had hit people in the stomach, chest, or face. Mona did not deny being violent at times with people. (Tr. 5/12/1995, pp. 4-5). Detective Christian had testified at Mona's trial that there had appeared to have

34

been a significant struggle at Mona's auto body shop and that it would be difficult to explain that Mona was not involved in the assault. *See Cristini v. McKee*, No. 2006 WL 5720343, * 4 (E.D. Mich. March 28, 2006).       The trial court's exclusion of evidence of the jailhouse fight between Petitioner and Mona was not so egregious that it effectively denied Petitioner a fair trial, in light of the fact that Petitioner was not completely barred from presenting testimony or evidence concerning Mona's violent tendencies and the likelihood from the evidence presented that he was actively involved in the victim's murder. *See Fleming v. Metrish*, 556 F. 3d 520, 535-36 (6th Cir. 2009).  With the quantum of evidence on the defense theory in the record, this Court concludes that Petitioner was afforded "a meaningful opportunity to present a complete defense." *Allen v. Howes,* 599 F. Supp. 2d 857, 873 (E.D. Mich. 2009)(citing *Crane*, 476 U.S. at 690 (citation and internal quotations omitted)).

Petitioner lastly contends that he was deprived of the right to present a defense when the trial court refused to permit him to cross-examine Mona about pending bad check charges.

In the present case, although Petitioner was unable to impeach Mona with his pending bad check charges, he was able to confront Mona with a wealth of evidence to challenge Mona's credibility and bias.  Mona admitted that he was on parole for delivery of marijuana at the time of the murder.  Mona had already been convicted of mutilating a body and being a fourth felony habitual offender,

which exposed him to a possible life sentence. Prior to his sentencing, Mona

entered into an agreement with the prosecutor that called for Mona to testify

against Petitioner. In exchange for his agreement to testify, the Macomb County

Prosecutor's Office agreed that Mona would be sentenced only as a third

habitual offender, which would limit his maximum sentence liability to thirteen

and 1/3 to twenty years. The parties further agreed that Mona would be

permitted to serve his state sentence in a federal prison. Mona admitted having

a prior conviction for passing bad checks, and had passed stolen checks at the

Oakland Mall on the day of the murder. Mona further admitted to a number of

inconsistencies between his statements to the police and his trial testimony. See

*Cristini v. McKee*, No. 2006 WL 5720343, Slip. Op. at * 1-3. In light of other

impeachment evidence presented against Mona, the admission of the evidence

that Mona had pending criminal charges would have been cumulative and

marginally relevant, such that its exclusion did not violate petitioner's Sixth

Amendment right to confrontation. *See Washington v. Renico,* 455 F. 3d 722,

729-30 (6th Cir. 2006). Petitioner is not entitled to habeas relief on his sixth

claim.

### G. Claim # 8. The suggestive identification claim.

Petitioner next alleges that he was subjected to a suggestive identification

procedure when Charlene Ramsey was exposed to a single photograph of

Petitioner before identifying him as the blonde haired man who had come into

36

the gasoline station on the morning of January 17, 1994.

A pre-trial hearing was held on Petitioner's motion to suppress the identification. Ms. Ramsey, who is African-American, remembered January 17, 1994, because it was Dr. Martin Luther King's Jr.'s holiday and she was upset that she had to work that day. Ramsey remembered Mona and Petitioner because she initially thought that the men were going to drive off without paying for the gasoline that they had pumped. Ramsey was afraid that the men were going to drive off because the darker haired man was standing at the pump and kept looking over at the gas station window while the man whom she identified as Petitioner was bent over pumping gasoline. Petitioner then came into the gasoline station and spilled some coffee. Ramsey estimated that the men were at the gas station for 10-15 minutes. Ramsey acknowledged that Petitioner's hair was longer when he was at the gas station than at the time of the hearing, but shorter than in the photograph that the police showed her. Ramsey remembered Petitioner because he was smoking in the gas station and looked like he had been drinking, elaborating that Petitioner looked "hammered". Ramsey testified that the police came into the gas station about 3-4 weeks after she had seen Petitioner and showed her a photograph of Petitioner and a photograph of Mona. The police did not tell her that the men were being investigated for a crime, the witness was not told that the gasoline had been used to burn a car, nor was she encouraged to make an identification. (Tr.

37

3/15/1995, pp. 35-47).  At the conclusion of the hearing, the court denied the motion to suppress.

At trial, much of Ramsey's identification testimony was identical to her testimony at the pre-trial hearing. (Tr. 5/10/1995, pp. 44-75).  Ramsey testified that Petitioner looked different at trial in that he had short hair and was clean shaven. (*Id.,* p. 48).  Ramsey testified that she was "very certain" in her identification of Petitioner. (*Id.,* p. 52).  On cross-examination, she agreed with defense counsel's question that she was "very, very certain" that Petitioner was the man who had come into the gasoline station on January 17, 1994.(*Id.,* p. 52).  On re-direct examination, Ramsey stated that she had "no doubt" in her mind that Petitioner was with Mona at the gasoline station on the day in question. (*Id.,* p. 72).

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977).  However, to determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Neil v. Biggers*, 409 U.S. 188 (1972).  Five factors should be considered in determining the reliability of identification evidence: (1) the witness's opportunity to view the

38

criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the time and the confrontation. *Id.* at 199-200.

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive.  It is only after a defendant meets this burden of proof that the burden then shifts to the prosecutor to prove that the identification was reliable independent of the suggestive identification procedure. *See United States v. Wade*, 388 U.S. 218, 240, n. 31(1967).  If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred.  As long as there is not a substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

Petitioner is unable to establish that the single photo identification made by Ramsey was unreliable.  Ramsey had an extended opportunity to view Petitioner for 10-15 minutes on the day in question.  Ramsey remembered the day because it was the holiday commemorating Dr. Martin Luther King Jr.'s birthday and she resented having to work that day.  Ramsey remembered

Petitioner and Mona because she feared that the men would take off driving without paying for the gasoline. Ramsey remembered that Petitioner looked "hammered" and had spilled some coffee in her gas station. Although Ramsey was shown only one photograph of Petitioner by the police, she was not told that Petitioner was under investigation or wanted by the police. Finally, and most importantly, Ramsey was very certain of her identification of Petitioner. After reviewing all of the factors concerning this single photo identification, this Court concludes that the identification did not give rise to a substantial likelihood of irreparable misidentification. *See U.S. v. Causey,* 834 F.2d 1277, 1285 (6th Cir. 1987); *See also Kado v. Adams,* 971 F. Supp. 1143, 1148 (E.D. Mich. 1997). Petitioner is not entitled to habeas relief on his eighth claim.

### H.  Claim # 9.  The pre-charging delay claim.

Petitioner next claims that he was denied his right to due process because of the delay in charging him with the victim's murder. [4]

The Michigan Court of Appeals rejected this claim, on the ground that Petitioner had failed to come forward with any evidence of substantial prejudice to his right to a fair trial and an intent by the prosecutor to gain a tactical advantage by delaying his arrest. *People v. Cristini,* No. 188079, * 7

---

[4]  Respondent claims that this issue is procedurally defaulted because Petitioner failed to raise this issue before the Michigan Supreme Court after the Michigan Court of Appeals rejected this claim on his direct appeal. A review of the application for leave to appeal filed by Petitioner's appellate counsel with the Michigan Supreme Court, however, shows that this issue was presented to the Michigan Supreme Court. [This Court's Dkt. # 37]. Accordingly, this claim is not defaulted.

(Mich.Ct.App. July 17, 1998).

The Due Process Clause provides a limited role in protecting criminal defendants against "oppressive" pre-arrest or pre-indictment delay. *United States v. Lovasco,* 431 U.S. 783, 789 (1977). Proof of prejudice is generally a necessary but not sufficient element of a due process claim involving pre-indictment delay, and the due process inquiry must consider the reasons for the delay as well as prejudice to the accused. *Id.* at 790.

The Sixth Circuit has consistently read *Lovasco* to hold that dismissal for pre-indictment delay is warranted only when the defendant shows: (1) substantial prejudice to his right to a fair trial; and (2) that the delay was an intentional device by the government to gain a tactical advantage. *United States v. Brown*, 959 F. 2d 63, 66 (6th Cir. 1992).

Where a habeas petitioner fails to show that the prosecutor delayed the prosecution for illegitimate reasons, it is unnecessary for a court to determine whether the petitioner satisfies the "substantial prejudice" requirement. *Wolfe v. Bock,* 253 Fed. Appx. 526, 532 (6th Cir. 2007) (no due process deprivation of right to fair trial when petitioner failed to establish that 15-year delay between murder and his arrest was for illegitimate reasons). A defendant who seeks dismissal of criminal charges based on pre-charging or pre-indictment delay has the burden of demonstrating that the delay between the crime and the indictment was an intentional device on the part of the prosecution to gain a decided tactical

41

advantage in its case.  *United States v. Schaffer,* 586 F. 3d 414, 425-26 (6th Cir. 2009).

   Petitioner has offered no evidence to establish that the prosecutor intentionally delayed charging Petitioner in order to obtain a tactical advantage. It appears that Petitioner was only charged after Mona had been found guilty and was willing to testify against Petitioner in exchange for a reduction in his sentence exposure.  While obtaining a tactical advantage is not a justification for delaying prosecution, "[n]ew evidence is not a tactical advantage." *Graham v. Com.*, 319 S.W.3d 331, 342 (Ky. 2010).  "[I]ntentional delay for the purpose of gaining tactical advantage ... [does] not include delay to affirmatively strengthen the government's case—such as delay until a potential witness becomes available by reason of a plea bargain or the like." *Burns v. Lafler*, 328 F. Supp. 2d 711, 720 (E.D.Mich. 2004)(quoting *United States v. Crouch*, 84 F.3d 1497, 1514, n. 23 (5th Cir. 1996)).

   Petitioner is not entitled to habeas relief on his pre-charging delay claim, because he has failed to establish that the prosecutor intentionally delayed filing charges here to gain a tactical advantage, rather than for valid reasons. Because Petitioner has failed to show that the prosecutor delayed the prosecution for invalid reasons, it is would be unnecessary for this Court to determine whether Petitioner can establish that he was substantially prejudiced by the delay. *See Wolfe v. Bock,* 253 Fed. Appx. at 532.

Nonetheless, Petitioner is unable to establish that he was prejudiced by the delay in prosecuting his case. The Sixth Circuit has observed that: "[T]he standard for pre-indictment delay is nearly insurmountable, especially because proof of actual prejudice is always speculative." *United States v. Rogers,* 118 F. 3d 466, 477, n. 10 (6th Cir. 1997).

Petitioner claims that the pre-charging delay made two witnesses, Daniel Brusseau and Dr. Sawait Kanluen, the medical examiner, unavailable for trial. These two men, however, testified at Mona's trial and their testimony from that trial was read into the record at Petitioner's trial. Petitioner has not shown how their live testimony would have changed the outcome of the trial. Although Petitioner claims that Brusseau would state that another man was present with Mona in Mona's auto shop at the time that the victim was assaulted, he has offered nothing other than speculation in support of this claim. Petitioner is not entitled to relief on his ninth claim.

### I. Claim # 10. The cumulative errors claim.

Petitioner finally contends that he is entitled to habeas relief because of the cumulative error.

The cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief; because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker,* 425 F. 3d 250, 256

43

(6th Cir. 2005).  Petitioner is therefore not entitled to habeas relief on the grounds of cumulative error. *Id.*

### IV. Conclusion

For the reasons discussed, state court adjudication of Petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  Nor did the state court adjudication result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition.

In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

44

Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *See Slack v. McDaniel*, 529 U.S. at 484. Petitioner may, however, proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V.  ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that the petitioner will be **GRANTED** leave to appeal *in forma pauperis.*

s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  February 29, 2012

I hereby certify that a copy of the foregoing document was served James Cristini 244014, Kinross Correctional Facility, 16770 S. Watertower Drive, Kincheloe, MI 49788 and upon counsel of record on February 29, 2012, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager